## Willoughby et al. v. Tafel et al.

Nov. 9, 1945.

Wilbur Fields and Louis H. Jull for appellants.

David R. Castleman, Richard H. Hill, Lawrence G. Duncan, and Lawrence S. Grauman for appellees.

OPINION OF THE COURT BY JUDGE HARRIS—Affirming.

In 1941, pursuant to the statutory provisions then in force,—3037h-111 et seq.—a tract of land near St. Matthews, in an unincorporated area of Jefferson county, was laid out as a residential section and given the name of Arlington Subdivision. The undertaking was a rather ambitious one, embracing, as it did, several hundred lots, with streets, utility easements, etc., all shown on a plat which was approved by the Louisville Planning and Zoning Commission and filed in the office of the county court clerk. Among the streets so laid out and dedicated are Norbourne Boulevard and Delray Road. Norbourne Boulevard constitutes the northerly boundary line of the subdivision and runs east and west; Delray Road runs north and south and, at its northerly terminus, intersects Norbourne Boulevard.

In 1942, and before any of the lots in the subdivision had been improved or sold, the General Assembly enacted what is now carried as Chapter 100 of KRS. On the authority of the power conferred by that enactment, the city of Louisville and the county of Jefferson created the Louisville and Jefferson County Planning and Zoning Commission, which thereupon became invested with

power and authority to prepare and approve a comprehensive plan for the physical development of both the incorporated and unincorporated areas of the county, and to recommend those plans to the Fiscal Court of the county and to the Legislative body of the city for approval and adoption. KRS 100.044. In due time a zoning map and certain zoning regulations for the unincorporated areas of the county were prepared and submitted by the Commission, adopted by the Fiscal Court, and duly recorded in the office of the clerk of Jefferson county in conformity with and pursuant to the statutory provisions, supra. The zoning map and regulations so recommended and so adopted had the effect of classifying all the lots in Arlington Subdivision as B—1 family residence lots; and section 4 of the regulations provides that no building falling within that classification shall be erected on a lot containing less than 5,000 square feet, or which has a frontage of less than 50 feet at the building line. This section also provides that each corner lot shall have a front yard of at least 60 feet on each of the two intersecting streets that constitute the corner; i. e., the building must set back 60 feet from the center line on each street on which it faces. After residences had been constructed in conformity with the plat and the regulation mentioned on virtually all of the other lots in the subdivision, the appellee owner applied to the zoning enforcement officer for permits to construct a single family residence on each of the corner lots at the intersection of Delray Road with Norbourne Boulevard; i. e., lots 15 and 16, as shown upon the plat. Both permits were refused by the inspector upon the ground that by reason of the size of the lots—each of which faced 50 feet on Norbourne Boulevard and 104.25 feet on Delray Road— the proposed residences would be less than 60 feet from the center line of Delray Road.

Being of the opinion that an injustice was being done him by the zoning enforcement officer, the appellee owner filed an application with the Board of Zoning Adjustment and Appeals for a variation from the requirements of the regulations and for permission to occupy a portion of the front yard of each of the two lots. After public hearings, at which the interested parties introduced such evidence as they desired to offer, and after a personal inspection of the premises by its members, the Board entered the following resolution, or order:

"Whereas, from the evidence presented, it is apparent that the lot, on which this residence is proposed to be built, was of record at the time of the effective date of the Zoning Regulations and is of such size that after providing the required side yard, a residence could not be built upon it; that to grant the application would be in accordance with the requirements of the Subdivision Plat of Arlington Subdivision and would permit the residence to be built on the same line as observed by other residences along Delray Road to the South and to deny the application would result in hardship and injustice upon the owner.

"Resolved, That the application be and is hereby granted."

Feeling aggrieved by that order, and being of the opinion that the Board had exceeded its authority or, at least, that it has abused its discretion, Mr. Willoughby and Mr. Stitch, as plaintiffs, filed in the circuit court a statement of appeal; and it is from the judgment of that court dismissing their appeal that they have come to this court.

The procedure which was followed by the appellee in applying to the zoning enforcement officer and then to the Board, as well as the procedure which was followed by the appellants in first appealing from the action of the Board to the circuit court, and then from the judgment of that court to this court, is so clearly authorized by KRS 100.078, and the several sections immediately following, that only two material questions are presented by the record: (1) Did the Board have authority to authorize the variance? and (2) Were the facts sufficient to sustain their exercise of that authority?

(1) The first question, which is one of law, is so clearly and so positively answered by subsection (3) of KRS 100.082 that there would be no point in our entering upon a consideration of the cited authorities upon the point. That subsection reads:

"(3) To hold hearings on petitions for and to authorize variances from a strict application of any zoning regulation or restriction so as to relieve difficulties or hardships in cases when and where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the enactment of such

regulation or restriction, or by reason of exceptional topographical conditions or other extraordinary and exceptional situations or conditions of such piece of property, the strict application of such regulation or restriction would result in peculiar and exceptional practical difficulties to, or exceptional hardship upon, the owner of such property. Such grant of variance shall comply as nearly as possible in every respect with the spirit, intent and purpose of the zoning plan; it being the purpose of this provision to authorize the granting of variations only for reasons of demonstrable and exceptional hardship as distinguished from variations sought by applicants for purposes or reasons of convenience, profit or caprice.''

(2) The plat of Arlington Subdivision—which had been approved and recorded in the office of the clerk of Jefferson county prior to the 1942 enactment supra, and before the creation of the Louisville and Jefferson County Board of Zoning Adjustment and Appeals—prescribed that the building line of each lot thoroughout the length of Delray Road should set back 35 feet from the center line of the road. And the record shows that this restriction was observed in the improvement of all the lots except 15 and 16. In other words, in permitting the variance which it did, the Board was merely restoring the original set back line and making it possible for the appellee owner to improve his lots in conformity and in harmony with the plan which had been followed by the owners of all the other lots in the subdivision. In addition to that the width of each of the two lots in question was such that any other action by the Board would have worked an extreme and unreasonable hardship on the owner, and would have constituted a disregard by it of both the word and the spirit of the Zoning Act.

Since it is our opinion that the judgment must be affirmed, it becomes immaterial that the lower court did not restrain the appellee owner from proceeding with his building operations during the pendency of the action.

The appellants argue that since the statute prescribes a de novo trial, it was not proper for the lower court to enter an order dismissing their appeal; it being their contention that the court should have rendered an independent judgment. Strictly speaking, that is true; but since an independent judgment would have been

equally adverse to the appellants, we are not disposed to reverse the case on that point.

There is no bill of exceptions, and in view of the state of the record as presented, we regard as being without merit the contention that the appellees did not sustain the burden which rested upon them.

Judgment affirmed.